UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISON

In re:                                                                    Case No.: 9:10-bk-11900-JPH

Chapter 7

    Elsie Montemoino,

        Debtor.

_____/

Diane L. Jensen,

        Plaintiff

v.                                                                        Adv. Pro. No. 9:11-ap-01096-JPH

Elsie and Manuel Montemoino,

        Defendants.

_____/

**MEMORANDUM ORDER ON DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT**
(Doc. 5)

Introduction

    The New Jersey legislature's 1988 statutory enactments concerning tenancy by the entireties property modified then-existing New Jersey common law to prohibit a creditor of only one spouse from executing on property owned in the tenancy by entireties form. Where entireties property is exempt from execution by one spouse's creditors, the subsequent transfer or disposition of such property cannot be the subject of a fraudulent transfer action by that spouse's creditors because such creditors would have no legal right to look to the entireties property for satisfaction of their claims. In this case, the married but single-filing Debtor, together with her non-debtor husband, owned the proceeds resulting from the sale of their real property as tenants

by the entirety. Accordingly, the sales proceeds were not available to satisfy the claims of only the Debtor's creditors. The chapter 7 trustee in the Debtor's bankruptcy case ("Trustee") initiated an adversary proceeding and filed a one-count complaint alleging a fraudulent transfer of the sales proceeds. However, as a creditor of only the Debtor, the Trustee has no legal interest in the tenancy by the entireties sales proceeds, and any transfer of those proceeds cannot form the basis of a fraudulent transfer action. Therefore, the Court grants summary judgment in favor of Defendants on the Trustee's fraudulent transfer claim.

Procedural Posture

This matter came on for hearing before the Court on February 21, 2012 on the Defendants' Motion for Summary Judgment (AP Doc. 5) (the "Motion"), in which Defendants seek judgment in their favor as a matter of law on the Plaintiff-Trustee's one-count complaint to avoid an alleged fraudulent transfer. The Court has considered the Motion and supporting affidavit, as well as the argument of counsel and the case law relied on by the parties.

Undisputed Facts

The Debtor is a married woman who filed her bankruptcy petition on May 19, 2010. The Debtor was not joined in the filing of her bankruptcy by her spouse. On October 6, 1989, the Debtor and her non-filing spouse took title to real property located in New Jersey pursuant to a deed, which described the Debtor and her spouse, as grantees, as "Manuel Montemoino and Elsie Montemoino, his wife." On August 31, 2009, the Debtor and her husband sold that real property and, after reducing the sales price by various settlement charges and paying off the first mortgagee, received a check in the net amount of $129,045.69 (the "sales proceeds"). The check directed payment to the order of "Manuel Montemoino and Elsie Montemoino." The net sales

proceeds were ultimately deposited into a bank account titled solely in the Debtor's non-filing spouse's name.

## Positions of the Parties

The Plaintiff, Diane Jensen, who is serving as the Trustee in the Debtor's main bankruptcy case, alleges that (i) half of the sales proceeds were property of the Debtor; (ii) the Debtor transferred her half of the sales proceeds to her husband for no consideration; and (iii) the Debtor became insolvent as a result of the transfer of sales proceeds. The Trustee concludes that the Debtor has, therefore, committed an avoidable fraudulent transfer, and she seeks to recover 50% of the sales proceeds from the Debtor's spouse. In response, the Defendants argue that the sales proceeds constituted tenancy by the entireties property, which cannot be the subject of a fraudulent transfer action by the Trustee.

Stated more fully, the Court understands Defendants' argument to be as follows: a bankruptcy trustee appointed in a married but single-filing debtor's case cannot bring a fraudulent transfer action to recover property which is initially and legitimately owned[1] in the tenancy by the entireties form, because such property is exempt from the claims of creditors of only one spouse. And because the Trustee is a creditor of only the Debtor, the Debtor and her spouse were free to dispose of their entireties property as they pleased without becoming the targets of the Trustee's fraudulent transfer lawsuit.

---

[1] The Court seeks to distinguish this case from those cases in which the targets of a fraudulent transfer action have converted otherwise non-exempt assets into exempt tenancy by the entireties property and then seek to shield such property from the reach of creditors based on the tenancy by the entireties characterization. *See, e.g., In re Smith*, 2008 WL 898185 *8 (M.D. Fla. Mar. 31, 2008) (addressing the fact that the Debtor had transferred non-exempt assets to exempt property). In this case, as explained below, there is no question that the Debtor and her non-filing spouse owned the real property as tenants by the entirety and that the net sales proceeds were also owned in the tenancy by the entireties form. Thus, it does not present a potentially impermissible asset conversion issue. Rather, as discussed below, the issue in this case is whether, under New Jersey law, a creditor of an individual spouse can execute on entireties property.

3

The Court notes that if Florida law applied in this case, the Defendants would be correct.[2] However, Florida law is not the applicable law in this case. Instead, New Jersey law applies since New Jersey was the state in which (i) the real property was owned and sold; (ii) the sale was consummated; and (iii) the corresponding sales proceeds were issued to the Debtor and her husband. Thus, the Court must analyze the Defendants' argument under New Jersey law.

Legal Issue

The Court must determine whether New Jersey law allows a creditor of an individual spouse to execute on property that is owned by a married couple as tenants by the entirety. If not, then the Trustee would not have a right to any portion of the entireties sales proceeds, and a fraudulent transfer action could not lie. To be clear, although it involves a general discussion of New Jersey law on tenancies by the entirety, this case does not present a § 522(b)(3)(B) issue because the Debtor did not have an interest in the sales proceeds as a tenant by the entirety

---

[2] Under Florida law, property that is owned in the tenancy by entireties form is immune from execution by creditors of a single spouse. *See In re Sinnreich*, 391 F.3d 1295, 1297 (11th Cir. 2004) (applying Florida law as stated in *Beal Bank SSB v. Almand & Assoc.*, 780 So. 2d 45, 53 (Fla. 2001)); *In re Smith*, 2008 WL 898185 at *7 ("Under Florida law, property held by a married couple as tenants by the entireties cannot be reached by a creditor to satisfy the individual debt of only one spouse."). Moreover, as the Florida Supreme Court explained in *Sneed v. Davis*, 184 So. 865, 868 (Fla. 1938), property that is beyond the reach of a creditor cannot give rise to a fraudulent transfer action by that creditor because "a sale, gift or other disposition of property which is by law absolutely exempt from the payment of the owner's debts cannot be impeached by creditors as in fraud of their rights. Creditors have no right to complain of dealings with property which the law does not allow them to apply on their claims, even though such dealings are with a purpose to hinder, delay or defraud them." Because the Trustee, as a creditor of only the Debtor, would have no legal right to the entireties sale proceeds under Florida law, the subsequent transfer/deposit of the sales proceeds into the Debtor's spouse's account would not give rise to a fraudulent transfer action. *See In re Robedee*, 367 B.R. 901, 908 (Bankr. S.D. Fla. 2007) (holding that since the primary characteristic of property held in a tenancy by the entireties is that each spouse owns an undivided interest in the whole, it follows that the subsequent transfer of a portion of entireties property into accounts singularly in the name of a debtor's non-filing spouse did not offend any provision of the bankruptcy code); *In re Wingate*, 377 B.R. 687, 695 (Bankr. M.D. Fla. 2006) ("As long as the initial creation of the entireties estate was not fraudulent, therefore, courts generally find that a subsequent transfer of an interest in the entireties property is not a fraudulent transfer."); *In re Mathews*, 360 B.R. 732, 746 (Bankr. M.D. Fla. 2007) (noting that a transfer of exempt property to other exempt property is not a fraudulent transfer); *In re Kimmel*, 131 B.R. 223, 229 (Bankr. S.D. Fla. 1991) ("A debtor can only commit fraud on his creditors by disposing of such property as the creditor would have a legal right to look for satisfaction of his claim.").

immediately before the commencement of her bankruptcy case.[3] Indeed, the Debtor attempted to claim 50% of the sales proceeds as exempt on her amended Schedule C pursuant to that section (BK Doc. 18). On the Trustee's objection to that claim of exemption, the Court ruled that the Debtor was not permitted to claim an exemption on the sales proceeds. (BK Doc. 40).[4] The effect of the Court's previous order, however, did not require the sales proceeds to be turned over to the Trustee; nor does it resolve the instant proceeding. Rather, the order simply ruled that the Debtor could not claim half of the sales proceeds as exempt under § 522(b)(3)(B) because she had no interest in the proceeds at the time she filed her bankruptcy case, due to the pre-petition transfer of all of the sales proceeds to her husband's account. In short, the sales proceeds were not property of the estate; thus, a § 522(b)(3)(B) exemption would be inapplicable because such an exemption only applies to property of the debtor's estate.[5]

## Legal Analysis

### I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b). This is a core proceeding pursuant to 28 U.S.C. § 157(a) and (b)(2)(H). To the extent a reviewing court finds this proceeding to be a core, but constitutionally impaired, proceeding or a non-core proceeding, the parties have consented to this Court hearing the proceeding under 28 U.S.C. § 157(c)(2), and the Court may, therefore, enter a final judgment resolving this matter.

---

[3] Nevertheless, the analysis is essentially the same as that which would be employed in the § 522(b)(3)(B) context because the Court must still determine whether entireties property is exempt from process (by a creditor of just one spouse) under the applicable non-bankruptcy law (i.e., New Jersey state law).

[4] At the time this issue was raised and ruled on, this case was being handled by the Honorable David Adams. Judge Adams has since retired, and the undersigned, as one of two visiting judges in the Fort Myers division, has been assigned to this case.

[5] Section 522(b)(1) allows an individual debtor to exempt from property of the estate the property listed in either § 522(b)(2) or § 522(b)(3).

## II.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c), made applicable to this adversary proceeding through Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment is appropriate if the court determines that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Because there are no disputed issues of material fact, and the dispositive issue before the Court is of a purely legal nature, the Court is satisfied that it is appropriate to rule.

## III.  New Jersey Law on Tenancy by the Entireties Property

### A.  The Real Property

There is no question that the Debtor and her husband owned the real property in New Jersey as tenants by the entirety. In 1987, the New Jersey state legislature enacted a series of statutes governing tenancy by the entireties property.  *See* N.J. Stat. §§ 46:3-17.2 – 46:3-17.4. The statutes became effective on April 4, 1988, and apply to tenancies by the entirety created on or after that date.  *Vander Weert v. Vander Weert*, 700 A.2d 894, 897 (N.J. Super. A.D. 1997).

New Jersey Statutes section 46:3-17.2 governs the creation of a tenancy by the entirety. The statute states that a tenancy by entirety shall be created when: "[a] husband and wife together take title to an interest in real property or personal property under a written instrument designating both of their names as husband and wife." N.J. Stat. § 46:3-17.2(a).  As is clear from the foregoing language, the statute expressly provides for the creation of a tenancy by the entirety in both real and personal property.  The creation of a tenancy by the entirety in personal property represents a change in and departure from the previous common law of New Jersey.

*See, e.g., State Department of Treasury v. Myndyllo*, 542 A.2d 478, 481 (N.J. Super. A.D. 1988) (holding that proceeds of a conveyance of real property are personalty and cannot be held by the entirety); *In re Youmans*, 117 B.R. 113, 117 (Bankr. D. N.J. 1990) ("tenancies by the entireties in personal property do not exist in New Jersey").[6]

With respect to the real property, the Defendants took title to that property via deed dated October 6, 1989. Thus, the entireties statute is applicable. Here, the deed was a written instrument which referred to both Defendants, and expressly designated Mrs. Montemoino as Mr. Montemoino's wife. *See* AP Doc. 5, Exh. 1, p. 3 ("This Deed is made on October 6, 1989, between Donald J. Ritchie…and Manuel Montemoino and Elsie Montemoino, his wife…"). That language tracks the last sentence of New Jersey Statutes section 46:3-17.2. "Language which states '…… and ……, his wife' … shall be deemed to create a tenancy by the entirety." That is precisely how the Defendants' deed reads, and the Court must, therefore, conclude that the Defendants owned the real property as tenants by the entirety.

B. The Sales Proceeds

When Defendants sold their real property, they also took title to the sales proceeds as tenants by the entirety. The general rule in jurisdictions that recognize tenancies by the entirety in personal property is that a tenancy by the entirety can exist in the proceeds or derivatives of real property which had been held in the entireties form. *See* 41 Am. Jur. 2d Husband and Wife § 27. Indeed, "[a]n estate by the entireties is <u>presumed</u> to follow the proceeds of the sale of the property so held, in the absence of evidence indicating a contrary intention by both parties. *Id.* (emphasis supplied). Even jurisdictions which do not generally recognize tenancies by the

---

[6] It is unclear to this Court why the *Youmans* court would have made such a blanket statement in an opinion dated more than two years after the effective date of New Jersey Statutes section 46:3-17.2 without even mentioning that statute or potentially qualifying its statement to the application of the facts before it.

entirety in personal property may acknowledge a limited exception for the proceeds of real property owned in the entireties form. *Id.*

Of course, a particular state is free to disallow an entireties estate in personal property if it so chooses, and prior to the enactment of New Jersey Statutes section 46:3-17.2, New Jersey appears to have taken that course. *See, e.g., Fort Lee Sav. & Loan Ass'n v. LiButti*, 254 A.2d 804, 807 (N.J. Super. A.D. 1969) (dissenting opinion) (arguing that there is no justifiable basis for extending the recognition of a tenancy by the entirety estate to personal property which replaces real property owned in the entireties form); *Fort Lee Sav. & Loan Ass'n v. LiButti*, 264 A.2d 33 (N.J. 1970) (reversing, *per curiam*, the lower appellate court's decision based on the dissenting opinion cited above); *Myndyllo*, 542 A.2d at 481 ("proceeds of a conveyance of realty are personalty and cannot be held by the entirety, regardless of whether the realty is conveyed voluntarily or pursuant to a judgment in condemnation"). *See generally* 22 A.L.R. 4th 459 § 4.

However, the Court notes that the foregoing cases—including those cases cited in the American Law Report—were all decided, or involved transactions that took place, prior to the effective date of New Jersey Statutes section 46:3-17.2. It is undeniable that, as of the effective date of that statute, personal property in New Jersey can be owned by a married couple as tenants by the entirety. *See In re Kirshner*, 2007 WL 3232258 *7 (Bankr. S.D. Fla. Oct. 30, 2007). Notwithstanding this fact, the Court has not located any New Jersey state court decisions expressly addressing whether the sales proceeds from real property that had been owned in the entireties form maintain the same entireties status as a matter of law. However, regardless of whether New Jersey state courts would rule that proceeds from the sale of real property owned in the entireties form would retain the same entireties status—in light of the statutory enactment of section 46:3-17.2 and the general presumption to that effect—the Court finds in this case that the

Defendants owned the sales proceeds as tenants by the entirety in accordance with New Jersey Statutes sections 46:3-17.2 and 46:3-17.3.

Under those statutes, Defendants took title to an interest in personal property (i.e., the sales proceeds) under a written instrument, which, although not expressly designating the Defendants as husband and wife, must nevertheless be construed as creating a tenancy by the entireties under New Jersey Statutes section 46:3-17.3. The check issued to the Defendants as a result of the sale of their real property was issued to, and payable to the order of, "Manuel Montemoino And Elsie Montemoino." Under the New Jersey Uniform Commercial Code, the check constitutes a "written instrument" within the meaning of New Jersey Statutes section 46:3-17.2. Furthermore, the presumption afforded by New Jersey Statutes section 46:3-17.3 requires the Court to conclude that a tenancy by the entirety was created.

Specifically, New Jersey Statutes section 12A:3-104(b) defines the term "instrument" as a "negotiable instrument," which, in turn, is defined in New Jersey Statutes section 12A:3-104(a)(1)-(3). Under that tripartite definition, a "negotiable instrument" is "<u>an unconditional promise</u> or <u>order to pay a fixed amount of money</u>, with or without interest or other charges described in the promise or order, <u>if it</u>: (1) <u>is payable</u> to bearer or <u>to order at the time it is issued</u> or first comes into possession of a holder; (2) <u>is payable on demand</u> or at a definite time; <u>and</u> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money…." (emphasis supplied).

All of the foregoing elements are satisfied under the relevant provisions of New Jersey's Uniform Commercial Code. The settlement agent who facilitated the closing on the Defendants' sale of their real property, Stephen B. McNally, Esq., by signing the check, gave an unconditional order to pay the fixed amount of money ($129,045.69) to the Defendants. The

9

"order" meets the requirements of New Jersey Statutes section 12A:3-103(a)(6) as a "written instruction to pay money signed by the person giving the instruction." The order was "payable to order" at the time it was issued under New Jersey Statutes section 12A:3-109(b) because it was payable to the order of an indentified person, namely the Defendants. The order was also "payable on demand" under New Jersey Statutes section 12A:3-108(a) because it did not state any time of payment. And, finally, the order did not state any other undertaking or instruction to perform any additional act other than to pay the sum of money to the Defendants. Accordingly, pursuant to New Jersey Statutes section 12A:3-104(a)-(b), the Defendants took title to the sales proceeds under a written instrument as required by New Jersey Statutes section 46:3-17.2.

Furthermore, while that instrument did not designate both Defendants' names as husband and wife, New Jersey Statutes section 46:3-17.3 requires the Court to construe the instrument as creating a tenancy by the entireties. That statute provides: "[n]o instrument creating a property interest on the part of a husband and wife shall be construed to create a tenancy in common or a joint tenancy unless it is expressed therein or manifestly appears from the tenor of the instrument that it was intended to create a tenancy in common or joint tenancy." In sum, the statute establishes a presumption that an instrument creating a property interest on the part of a married couple results in a tenancy by the entirety. Because nothing on the face of the check indicates that a tenancy in common or joint tenancy was intended, the Court must conclude that a tenancy by the entirety was created.

C. <u>Ability of Creditors to Reach Entireties Property</u>

Having determined that the Defendants' sales proceeds constituted tenancy by the entireties property, the Court must now determine whether New Jersey law, in light of the 1988 statutory enactments, allows a creditor of only one spouse to execute on such property.

Prior to the legislature's enactment of the tenancy by the entirety statutes, the answer under New Jersey common law was in the affirmative. Over the course of thirty years, the New Jersey Supreme Court touched upon this issue in three different decisions. *See King v. Greene*, 153 A.2d 49, 60 (N.J. 1959); *Newman v. Chase*, 359 A.2d 474, 477 (N.J. 1976); and *Freda v. Commercial Trust Co. of New Jersey*, 570 A.2d 409, 414 (N.J. 1990).

In *King v. Greene*, the New Jersey Supreme Court held that "judgment creditors of either spouse may levy and execute upon their separate rights of survivorship," thereby becoming a tenant in common with the non-debtor spouse during the joint lives of husband and wife. 153 A.2d at 60. In *Newman v. Chase*, the debtor-husband had filed for bankruptcy, and the bankruptcy trustee sold the real property which was owned by the debtor and his non-debtor spouse as tenants by the entirety. The purchaser of the property sued for partition of the property. While the court ultimately denied the request for partition, the court made it clear that a creditor of only one spouse, including a bankruptcy trustee, was able to execute on entireties property and effectuate a tenancy in common. *See Newman*, 359 A.2d at 477 (acknowledging that the purchaser of the debtor's property had succeeded to both the debtor's interest as a tenant in common for the joint lives of the debtor and his wife, as well as his potential survivorship interest in the event that the debtor survived his wife).

In the most recent case, *Freda v. Commercial Trust Co. of New Jersey*, the court, citing *King*, wrote that "[d]uring coverture,[7] a judgment creditor of a debtor-spouse may levy on and sell that spouse's right of survivorship as well as his or her undivided one-half interest in the life estate for the joint lives of the tenants." 570 A.2d at 414. Although decided in 1990, the *Freda*

---

[7] Black's Law Dictionary defines "coverture" as the "condition or state of a married woman" and explains that the term is often used in a historical context to describe the legal limitations and disability that formerly existed at common law where a woman could not own property free from her husband's claim or control. *Black's Law Dictionary* 366 (6th ed. 1990). The Court finds it curious that the *Freda* court would continue to use such an antiquated term.

11

court expressly noted—perhaps as a harbinger of potential change afoot—that the entireties tenancy in question had been created well before the enactment and effective date of New Jersey Statutes section 46:3-17.4, thus rendering the statute inapplicable. *Id.* at 411. In sum, the common law of New Jersey—at least prior to 1988—permitted creditors of a single spouse to execute on tenancy by the entireties property. However, with the enactment of the tenancy by the entireties statutes, this Court concludes that creditors of just one spouse can no longer execute on entireties property.

The enactment of New Jersey Statutes sections 46:3-17.2 through 46:3-17.4 accomplished at least three things. First, the express recognition that an entireties estate could be created in personal property marked a drastic change in the state of New Jersey law. There is no statutory limitation on what type of personal property can be owned in the entireties form, and the extension of the entireties estate to personal property evidences an intent to broaden the protections of the entireties form of ownership.

Second, the presumption that a tenancy by the entirety (as opposed to a joint tenancy or tenancy in common) is created, absent a manifest indication to the contrary, reveals a clear intent to afford greater legal protection to entireties property than would otherwise exist in the other two forms of ownership. As discussed more fully below, a significant and distinguishing feature of a tenancy by the entirety is that each spouse enjoys an interest in the whole of the property, as opposed to a mere fraction or specific percentage. To allow a creditor of only one spouse to reach entireties property in satisfaction of an individual spouse's debt would necessarily infringe and destroy the non-debtor spouse's right and interest in the whole of the property. *See In re Marks*, 2011 WL 868667 *3 (E.D. Pa. June 14, 2001).

Third, the prohibition on either spouse severing, alienating, or otherwise affecting their interest in the tenancy by entirety during marriage without the written consent of both spouses evidences the legislature's intent to preserve the entireties estate and to elevate the interest of a married couple in the protection of their entireties property over the interest of a creditor of a single spouse in executing on such property. In *Freda,* the court expressly noted that a married couple holding property as tenants by the entirety are provided with "a means of protecting marital assets during coverture and as security for one spouse on the death of the other." 570 A.2d at 414. The court also noted, though, in reliance on its former decision in *King v. Greene*, that such protection must be balanced against the rights of a creditor to the assets of a debtor-spouse. *Id.* However, as mentioned above, the *Freda* court was unable to apply New Jersey Statutes section 46:3-17.4 in its analysis because the tenancy in *Freda* pre-dated the effective date of the statute. Section 46:3-17.4 represents the legislatively prescribed balance between entireties protection and creditors' rights by tipping the scale in favor of tenants by the entirety. The statute now prohibits the action taken by the debtor-husband in *Freda* (i.e., unilaterally mortgaging entireties property) and essentially eliminates the type of scenario addressed by the pre-statute common law.

Furthermore, all of the pre-statute cases involved competing asserted interests in real property following an execution sale. For example, in *Freda,* the creditor executed on the debtor-spouse's interest in real property as a result of a default on a mortgage granted by only one spouse. However, pursuant to New Jersey Statutes section 46:3-17.4, one spouse can no longer grant a mortgage on real property owned in the entireties form without the consent of the other spouse. Similarly, one spouse's decision to file for bankruptcy does not sever the tenancy by the entirety. *See In re Brannon*, 476 F.3d 170, 175 (3d Cir. 2007) ("filing a bankruptcy

13

petition does not sever a tenancy by the entirety and thus an individual spouse may be able to exempt the whole of entireties property from the bankruptcy estate in some circumstances"); *In re O'Lexa*, 476 F.3d 177 (3d Cir. 2007) (finding that joint liability of both spouses is necessary for a creditor to access property in a bankruptcy estate which is owned by the spouses as tenants by the entireties). "When only one spouse pursues the bankruptcy route, individual claims against him do not vitiate the immunity of the entireties estate." *O'Lexa*, 476 F.3d at 179.[8] Simply put, joint action by both spouses acting in concert is now required to waive the protections statutorily afforded to entireties property, and the Court finds that the statutory enactments evince a legislative preference to favor and benefit married couples owning property as tenants by the entirety over creditors of just one spouse seeking to satisfy their claims against entireties property.

By interpreting the enactment of New Jersey Statutes section 46:3-17.2 through 46:3-17.4 as a legislative pronouncement meant to provide greater protection to entireties property and to shield entireties assets from execution by creditors of a single spouse, the Court finds persuasive the fact that New Jersey courts have long recognized the critical, unique feature of entireties property, which is that such property is owned by each spouse "*per tout et non per my*." Black's Law Dictionary defines this phrase as "by the whole, and not by the moiety." *Black's Law Dictionary* 1145 (6th ed. 1990). "Moiety" is defined as "the half of anything." *Id.* at 1005. For instance, joint tenants are said to hold by moieties. *Id.* Accordingly, a husband and wife who own property as tenants by the entirety each own the whole of the property—not an apportionable or fractional interest.

---

[8] This legal principle does not resolve the issue before the Court because the sales proceeds were not property of the estate at the time of the Debtor's bankruptcy filing, due to her pre-petition transfer of the proceeds to her non-filing husband's bank account. Thus, the issue is not whether the tenancy by entirety has been severed by the Debtor's bankruptcy, but rather whether the former entireties sales proceeds would have been reachable by creditors of only the Debtor-wife.

The *per tout et non per my* feature of a tenancy by the entireties distinguishes it from a joint tenancy and a tenancy in common.  How, though, can the non-debtor spouse in this case be said to be seized of the entire sales proceeds if the Trustee can assert a right in, and force the turnover or recovery of, half of the proceeds?  To give credence to the *per tout et non per my* feature of entireties property necessitates a conclusion that a creditor of only one spouse cannot execute on entireties property.  *See In re Marks*, 2011 WL 868667 at *3 (holding that if a creditor of just one spouse were permitted to reach entireties property, then an encroachment on the non-debtor spouse's entireties assets would result, which would change the fundamental meaning of a tenancy by the entirety, and he unique feature of that tenancy would be destroyed).  This recognition is now codified at New Jersey Statutes section 46:3-17.4, which requires both spouses to consent to any action which would jeopardize the entireties property.

As noted above, New Jersey courts have long recognized the *per tout et non per my* feature of a tenancy by the entirety.  As far back as 1846, one of the justices of the New Jersey Supreme Court acknowledged in *Wyckoff v. Gardner*, 20 N.J.L. 556 (N.J. 1846) this distinguishing feature of an entireties estate.  Various New Jersey courts, including through the modern day, have continued to recognize this feature of an entireties estate.  *See, e.g., Hennefeld v. Township of Montclair*, 22 N.J. Tax 166, 190 (2005) (noting that "in a tenancy by the entirety each tenant holds the entire property together with the other spouse"); *Gauger v. Gauger*, 376 A.2d 523, 526 n. 1 (N.J. 1977) ("In a tenancy by the entirety, the husband and wife are seized per tout and not per my."); *Matter of Houghton's Estate*, 371 A.2d 735, 736 (N.J. Super. A.D. 1977).  This feature of a tenancy by the entirety stands in contrast to the ownership interests in a tenancy in common.  In direct opposition to a tenancy by the entirety, a tenancy in common involves tenants who are seized of the property *per my et non per tout*, and thus can have their individual

moieties attached by their own creditors.  *See Gery v. Gery*, 166 A. 108, 110 (N.J. Err. & App. 1933) (explaining the differences between the various estates).

In light of the New Jersey legislature's decision to expand tenancy by the entirety protection to personal property, such as the Debtor and her husband's sales proceeds in this case, the Court concludes that the sales proceeds are beyond the reach of the Trustee, and that she is, therefore, precluded from maintaining a fraudulent transfer action to recover proceeds which she would not otherwise be able to access.  To hold otherwise would eviscerate the legislative protection afforded to such property and ignore the longstanding and distinguishing feature of an entireties estate, thus allowing the Trustee to infringe upon and destroy the non-debtor spouse's *per tout* interest in the proceeds.

## Conclusion

For the foregoing reasons, the Court concludes that the Defendants are entitled to summary judgment in their favor.  Accordingly, it is

**ORDERED** that the Defendants' Motion for Summary Judgment (AP Doc. 5) is GRANTED. The Court will enter a separate Judgment consistent with this order.

DATED this 30th date of April, 2012.

BY THE COURT

_____
Jeffery P. Hopkins
United States Bankruptcy Judge